[Civ. No. 47669. First Dist., Div. One. June 20, 1980.]

Estate of JAMES BLOOM, Deceased.
FRANK B. BLUM, SR., as Special Administrator, etc.,
Petitioner and Respondent, v.
RAYMOND H. LEVY, Objector and Appellant.

**COUNSEL**

Raymond H. Levy, in pro. per., Christopher A. Brose and Jeffrey T. Wilber for Objector and Appellant.

Frank B. Blum, Sr., in pro. per., Frank B. Blum Jr., Kennedy, Bloom & Fletcher and Leonard J. Bloom for Petitioner and Respondent.

**OPINION**

**NEWSOM, J.**—James Bloom (decedent) died on May 19, 1977. His children, Leonard Bloom and Evelyn Birnbaum, filed for probate, on May 23, 1977, a duplicate original of a joint, mutual and reciprocal will decedent and his (later predeceased) wife executed in 1962.

On May 26, 1977, Bank of America (Bank) and Raymond Levy, Esq. (appellant) petitioned for probate of a will dated October 20, 1975, and codicil dated February 5, 1976.

The children and the Bank each applied for special letters of administration, and the Bank filed an opposition to the childrens' petition for special letters on June 7, 1977, and July 5, 1977.

On June 23, 1977, the children filed a contest to probate of the 1975 will and codicil on grounds of alleged undue influence by appellant and decedent's secretary-housekeeper.

The probate court denied both petitions for special letters, appointed a special administrator with general powers (administrator) and consolidated the two probate proceedings on July 19, 1977.

Thereafter, with the consent of both administrator and probate court, the children settled in their entirety the several claims arising from the 1975 will, and, without further contest, were found by the probate court to be entitled to the entire estate of decedent as beneficiaries of the 1962 will. At the same time, the probate court found the 1975 will violative of certain contractual provisions of the 1962 will, and ordered that a constructive trust be imposed upon decedent's net estate for the benefit of the children, and directed the administrator, after payment of all debts and obligations, to deliver the net estate to them.

Appellant thereupon filed his objection to the administrator's petition to settle final account, claiming, or "praying," entitlement to one-third of the statutory fees rendered for what he rather boldly asserts were services rendered "for the estate."

He now appeals from the court's order of March 28, 1979, approving the final account and directing distribution without provision for his claimed fees.

It is worth noting at the outset of our discussion, that decedent was 95 years old when he first consulted appellant concerning preparation of a new will, which, inter alia, would have had the effect of disinheriting decedent's children. It is also notable that the 1975 will which resulted from such consultation purported to require the Bank, as a condition precedent to its "qualifying" as executor, to engage appellant as attorney in all matters pertaining to the estate.

Appellant's claim for fees from the estate is based principally upon services rendered on behalf of the Bank. ▮ The 1975 will proposed by the Bank, however, was never admitted to probate, and appellant cites no statute or decision which would entitle him to fees and costs under such circumstances. Instead, he cites, in legal-digest style, a number of cases which bear only obliquely, if at all, on the issue, without

attempting to explain their significance. He claims, for example, that attorney's fees are allowable "where the executor/designee has endeavored to procure probate of a will—even where the attempt is unsuccessful," citing 11 decisions of other state courts. Six of these[1] apply state statutes which expressly allow fees where the attempt to probate a will, though unsuccessful, was made "in good faith." Three of the cited cases apply general fee statutes, but involve the defense of a will already admitted to probate.[2] Of the remaining two "authorities" *Alexander* v. *Bates* (1900) 127 Ala. 328 [28 So. 415] involves a will admitted to probate, while *In re Peppler's Will* (1943) 134 N.J.Eq. 160 [34 A.2d 291], which involved neither a fee statute nor an admitted will, permitted an award of counsel fees in favor of the testatrix against the executors personally upon a finding of fraud and breach of trust. We are at a loss to discern the relevance of these decisions.

Appellant's public policy argument is equally diffuse: *Platnauer* v. *Forni* (1933) 131 Cal.App. 393 [21 P.2d 638], while perhaps slightly more mellifluous than *In re Wah-Kon-Tah-He-Ump-Ah's Estate, supra*, 128 Okla. 178, is equally inapposite; it held an appointed executor personally liable to an attorney he had employed to litigate certain estate matters. In settling the final account, the executor falsely claimed all debts were paid, thus depriving the attorney of a chance to present his claim *in probate*. Here, we repeat, "the will" (1975) under which, if at all, appellant's rights arise, was never admitted to probate; the "executor" for whom appellant rendered services was never appointed; and the special administrator who presented the final account never employed appellant.

In all civil actions an attorney's compensation is left to the express or implied agreement of the parties except as specifically provided by statute. (Code Civ. Proc., § 1021.)  ■  Under the California law of wills, compensation for attorney services must be paid by the person employing him in the absence of a special agreement, special statutory

---

[1]*Fickle* v. *Scampmorte* (1962) 243 Ind. 165 [183 N.E.2d 838]; *In re Murphy's Estate* (1944 Sur.) 46 N.Y.S.2d 677; *In re Reimer's Will* (1933) 237 App.Div. 343 [261 N.Y.S. 100]; *In re Staiger's Will* (1928) 224 App.Div. 31 [229 N.Y.S. 523]; *Williams* v. *Hankins* (1926) 79 Colo. 237 [245 P. 483]. California has no comparable statute.

[2]*Butt* v. *Murden* (1930) 154 Va. 10 [152 S.E. 330]; *In re Wah-Kon-Tah-He-Ump-Ah's Estate* (1927) 128 Okla. 178 [261 P. 973]; *In re Soulard's Estate* (1897) 141 Mo. 642 [43 S.W. 617].

provision,[3] or exceptional circumstances. (*Estate of Stauffer* (1959) 53 Cal.2d 124, 131 [346 P.2d 748]; *Estate of Reade* (1948) 31 Cal.2d 669, 671 [191 P.2d 745]; 2 Cal. Decedent Estate Administration (Cont.Ed. Bar 1975) § 21.86, p. 932.)

A review of decisional law in California convinces us that appellant's position is equally insupportable on equitable grounds.

In *Estate of Hite* (1909) 155 Cal. 448 [101 P. 448], attorney fees were denied to an executor who employed attorneys to meet the opposition to his establishing the will. The court noted that in a contest in which the estate is absolutely without interest, it is just and equitable that those having a direct interest in maintaining the will bear all the costs and charges of maintaining it. (*Id.*, at p. 457.) If the will is established, however, the costs and counsel fees, being chargeable against those who benefit by the litigation, *may* be charged against the estate, if it goes to those parties benefited. (*Id.*, at p. 455.) In *Estate of Riviere* (1908) 8 Cal.App. 773 [98 P. 46], expressly limited in *Estate of Higgins* (1910) 158 Cal. 355 [111 P. 8], the court allowed compensation for services rendered to the executor by his attorney in resisting a contest of a will before probate, when the will was thereafter, by virtue of such services, admitted to probate. However, in *Estate of Higgins, supra*, the court denied compensation to the executor for attorney's fees resisting a contest before probate which resulted in establishing the will, noting that attorney's fees may be allowed under some circumstances such as where an allowance would be entirely equitable as to all persons interested in the estate. Thus, fees were approved in *Riviere* where all devisees and legatees were equally interested in opposing the contest and upholding the will, but disapproved in *Higgins* where the executor was beneficially interested as a devisee and legatee in maintaining the will, and it was not his obligation purely as executor to defend the litigation. (*Estate of Pryor* (1942) 51 Cal.App.2d 735, 739 [125 P.2d 511]; *Estate of Silva* (1938) 29 Cal.App.2d 52, 54 [84 P.2d 59].)

In cases where the nominated executor is the unsuccessful proponent of a will denied probate, attorney's fees incurred in proposing the will and opposing the contest have not been allowed (*Estate of Arnold*

---

[3]Probate Code section 910 provides in relevant part: "(a) Attorneys for executors and administrators shall be allowed out of the estate, as fees for conducting the ordinary probate proceedings, the same amounts as are allowed by the previous article as commissions to executors and administrators; and such further amount as the court may deem just and reasonable for extraordinary services."

(1932) 121 Cal.App. 247, 250 [8 P.2d 897]; *Estate of Olmstead* (1898) 120 Cal. 447, 454 [52 P. 804]): the contestants having been successful "there was no executor for whom services could be rendered." (*Estate of Riviere, supra*, 8 Cal.App. at p. 776.)

■ Where an attorney is employed merely for the purpose of procuring letters of administration in advance of any authority to deal with the assets of the estate, the estate is not to be charged with fees arising from preparation of the petition and notice of hearing, whether or not the application is successful. (*Estate of Morinini* (1967) 252 Cal.App. 2d 805, 808 [60 Cal.Rptr. 813]; *Estate of Simmons* (1872) 43 Cal. 543, 548.) ■ It is the established rule that where an applicant for issuance of letters testamentary is met with a contest, he is not entitled to recover attorney's fees incurred in applying for letters and resisting the contest; such contest is purely personal and not prosecuted for the benefit of the estate. The basic question in such a contest is: Who should administer the estate and thus receive a commission or compensation? (*Estate of Schwartz* (1948) 87 Cal.App.2d 569, 574 [197 P.2d 223]; *Estate of Barton* (1880) 55 Cal. 87, 88.)

■ Under section 1232, a court "may, in its discretion, order *costs* to be paid by any party to the proceedings, or out of the assets of the estate, as justice may require." (Italics added.) The court has power in its sound discretion to order costs to appointed executors when there is a successful contest after probate (*Estate of McKinney* (1896) 112 Cal. 447, 452 [44 P. 743]) and to unsuccessful proponents where there is a successful contest before probate and the legatees or executors acted in good faith and upon probable cause in proposing the will for probate. (*Estate of Dillon* (1906) 149 Cal. 683, 685 [87 P. 379]; *Estate of Olmstead, supra*, 120 Cal. at p. 452.) The discretionary power extends to and includes the case of an unsuccessful contestant, but such cases are limited to rare instances of great hardship in which the contestant acted in the utmost good faith throughout the proceeding. (*Estate of Bump* (1907) 152 Cal. 271, 273 [92 P. 642].) Nothing appears in the present record that would justify awarding such costs.

Appellant requests compensation for representation, consultation, and costs in the taking of a deposition. Neither the reason for the deposition nor the deposition itself appear in the record on appeal. The cost of taking the deposition cannot be charged against the estate, and appellant is not entitled to any fees or costs on that behalf. (*Estate of Tubbs* (1947) 82 Cal.App.2d 305, 307 [186 P.2d 7].)

Appellant next contends that attorney's fees and costs should be allowed because the will "must be submitted to Probate and presented to the Court within thirty (30) days of death (Probate Code Section 320)." ■ The Probate Code does not impose a duty on the executor to have the will probated (*Estate of Arnold* (1932) 121 Cal.App. 247, 250 [8 P.2d 897]); it merely provides that the custodian must "deliver" the will to the superior court having jurisdiction of the estate, and any executor, devisee or legatee named in the will or any other person interested in the estate "may" petition to have the will proved. (Prob. Code, § 320.) If the executor offers the will and is met with a contest, the executor may (1) assume the burden of resisting the contest in the absence of statutory allowance of attorney's fees out of the assets of the estate or (2) cast the burden on those who would be benefited by the probate of the will. (*Estate of Schwartz, supra*, 87 Cal.App.2d 569, 574; *Estate of Arnold, supra*, 121 Cal.App. 247, 250.)

■ Appellant asserts that since decedent's 1975 will, which he prepared, mandated that his services to the estate were required as a condition precedent to the executor qualifying as executor, and since the administrative provisions of the 1962 will may be changed even if the substantive provisions may not, he is entitled to his fees.

The answer to this rather brazen and self-serving contention is that the Legislature regulates and controls the administration and disposition of decedents' estates, and makes no provision for fees for one in appellant's position.

Finally, appellant attacks provisions of the decree directing the administrator to transfer real and personal property to the children under Probate Code sections 850-853 as being unsupported by evidence, and hence void.

Not only does the probate court possess substantial discretion to make such orders (cf. 2 Cal. Decedent Estate Administration (Cont.Ed. Bar 1975), § 30.11, p. 1171), but entry of the order is prima facie evidence of the correctness of the proceedings and the administrator's authority to make the challenged transfers. The only remedy is by direct appeal. (Cal. Decedent Estate Administration, *supra*, § 30.13, p. 1172.)

As appellant concedes, neither the Bank nor appellant had any legal standing to object, while those who had the right to oppose the petition

did not do so. A decree was duly made and entered, the time for appeal has passed, and the order has become an unassailable final judgment.

The appeal is denied. Costs are awarded to respondent, and, pursuant to California Rules of Court, rule 26a, appellant is assessed the sum of $1,250 for his patently frivolous appeal.

Racanelli, P. J., and Grodin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 13, 1980.